## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Eric A. Rieb, #289509, | ) | C/A No.: 1:09-2642-PMD-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Robert M. Stevenson III, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Eric A. Rieb filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Respondent's motion for summary judgment and return. [Entry ##13, 14]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [Entry #15]. Petitioner filed a response in opposition to Respondent's motion. [Entry #27]. Petitioner filed a supplement to his petition. [Entry #28]. Petition also filed a motion to amend his petition [Entry #29], to which Respondent filed a response in opposition. [Entry #30]. Having carefully considered the parties' submissions and the record in this case, the court finds that Respondent's motion for summary judgment should be granted and Petitioner's motion to amend should be denied.

I.    Procedural Background

In March 2001, Petitioner was indicted in Horry County for murder, mayhem and petty larceny (01-GS-26-1349). Petitioner was represented by John Clarke, Esquire. Petitioner went to trial on December 9–12, 2002, at which the jury found him guilty as charged. The Honorable Steven H. John sentenced Petitioner to forty years for murder and to concurrent sentences of ten years for mayhem and thirty days for petty larceny.

Petitioner filed a timely Notice of Appeal and was represented on appeal by Assistant Appellate Defender Robert M. Dudek. The South Carolina Court of Appeals filed an unpublished Opinion affirming Petitioner's convictions and sentence on March 29, 2005. *State v. Rieb*, 2005-UP-222 (S.C. App. March 29, 2005). On June 16, 2005, Petitioner filed a Petition for Rehearing, which the Court of Appeals denied in an August 29, 2005 Order.

Petitioner then filed a Petition for Writ of Certiorari on November 23, 2005. On December 19, 2006, the South Carolina Supreme Court filed a letter Order denying certiorari. The Remittitur issued on December 20, 2006.

Meanwhile, Petitioner filed a pro se Post-Conviction Relief ("PCR") Application (05-CP-26-5446) on October 24, 2005. *Contra Al-Shabazz v. State*, 527 S.E.2d 742, 747 (S.C. 2000) ("The applicant may not bring a PCR action while a direct appeal is pending. Rule 71.1(b), SCRCP"). Petitioner then filed an amended PCR application on March 25, 2006.

The Honorable John M. Milling held an evidentiary hearing into the matter on August 1, 2007, at the Horry County Courthouse. Petitioner testified at the hearing and was represented by Charles T. Brooks III, Esquire. Trial counsel was not presented as a witness because of health issues. App. 640. By Order dated August 22, 2007, Judge Milling denied PCR relief.

Petitioner timely served and filed a notice of appeal, and was represented on appeal by Deputy Chief Appellate Defender Wanda H. Carter. Counsel filed a *Johnson*[1] Petition for Writ of Certiorari that raised one issue and petitioned to be relieved as counsel. Petition submitted a pro se brief in which he presented ten questions.

By order dated February 4, 2009, the South Carolina Supreme Court denied certiorari and granted counsel's petition to be relieved. The Remittitur issued on February 20, 2009. This habeas petition followed.

II.    Discussion

A.    Factual Background/Trial Testimony

Petitioner and the victim had worked in the same restaurant. Testimony revealed that the victim had telephoned Petitioner's apartment on November 19, 2000 between six

---

[1] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

and eight times and had a brief conversation with Petitioner before Petitioner left for the victim's apartment on foot at approximately 7:45 p.m., borrowing his friend and co-worker Lawson's jacket. Later that evening, Petitioner's roommate called 911 to report that Petitioner had telephoned him and said that he killed the victim. Police set up a surround at the victim's apartment, where officers could see Petitioner pacing around the apartment before eventually running to the back of the apartment and attempting to escape through a bathroom window. Petitioner eventually obeyed the police's directive to exit the apartment, and he was arrested. An officer's search of Petitioner found a portion of the victim's penis in Petitioner's shirt pocket and a steak knife in the waist band of his underwear in the small of his back. Officers later recovered opened bottles of liquor, an open bottle of wine and ten Budweiser beer cans in a 24-pack hidden near the beachwear store under Lawson's jacket, along with full beer cans near Petitioner. Petitioner's clothing and shoes were bloody, and they were later seized.

The police search of the victim's apartment revealed the victim lying prone on the bloody kitchen floor, with an apparent head injury and with his pants pulled down below his bloody genitalia. Although the victim was still breathing, he died a short time later. Police discovered a bloody brass challis behind a garbage can in the kitchen. The medical testimony supported the State's theory that the challis or some heavy object was used to inflict multiple head wounds. The victim also had bruising on his body, nine broken ribs, a punctured liver and lung, significant edema of the brain and intracranial hemorrhage.

The victim's blood alcohol level was .125. A gay pornographic video tape was in the living room VCR.

At trial, Petitioner presented the testimony of several family members about homosexual assaults that Petitioner suffered in his childhood, including by his 15-year old cousin when Petitioner was eight years old. At trial, Petitioner admitted that he had hit and kicked the victim, and that he hit the victim with the challis, but claimed he did so in self-defense in an attempt to thwart the victim's homosexual advances while Petitioner was intoxicated.

B.    Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus:

Ground One:        Did the trial court have subject matter jurisdiction due to a fatal variance?

Ground Two:        Did the PCR court deny petitioner a fundamentally fair hearing in which to develop the factual bases for constitutional claims by not allowing him a continuance and discovery?

Ground Three:      Did the PCR court err in denying petitioner's allegation regarding trial counsel's failure to obtain previous psychiatric records and psychiatric expert for an affirmative insanity defense, as well as a complete defense of self-defense?

Ground Four:       Did the PCR court err in denying petitioner's claim that trial counsel failed to request jury charges which were rejected on the evidence presented at trial?

Ground Five:       Did the PCR court err in denying petitioner's allegation regarding trial counsel's failure to impeach a key State's witness?

Ground Six:     Did the PCR court err in denying petitioner's allegation regarding trial counsel's failure to object to prejudicial letters introduced at trial in violation of the Rules of Evidence and Miranda?

Ground Seven:   Did the PCR court err in denying petitioner's allegation regarding trial counsel's failure to object to the Solicitor's prejudicial closing arguments?

Ground Eight:   Did the PCR court err in denying petitioner's allegation regarding appellate counsel's failure to raise the prejudicial videotape issue on appeal?

Ground Nine:    Did the PCR court err in denying petitioner's allegation regarding appellate counsel's failure to raise on appeal the directed verdict issue.

Ground Ten:     Did the PCR court err in denying petitioner's allegation regarding appellate counsel's failure to provide "all necessary portions of transcript" to perfect the Appeal and challenging the "edited" portions of transcript which denied him a full and fundamentally fair appeal?

   C.    Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor

of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

D.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant

habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254 ("Section 2254"). This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available

state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)      (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
>
> > (A)      the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)      (i) there is an absence of available State corrective process; or
> >
> >          (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)      An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the

exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[2] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

---

[2]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default,[3] is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

---

[3] If a petitioner procedurally bypasses his state-court remedies, he is procedurally barred from raising them in federal court.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (*quoting Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and

actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (*citing Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

E.     Analysis

1.     Procedurally-Barred Grounds

Procedural default is an affirmative defense which is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). It is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Respondents have not asserted procedural default as to any of Petitioner's habeas grounds, therefore, a merits review on each is provided below.

2.     Merits Review

a.     Ground One

In Ground One, Petitioner alleges the following claims: (1) the trial court lacked subject matter jurisdiction, (2) there was no chain of custody of any tangible evidence, (3) there were no identification procedures (e.g., fingerprints) used on tangible evidence and/or crime scene, and (4) there was no evidence of malice or premeditation.

(1)     Petitioner claims the trial court lacked subject matter jurisdiction.

In his first argument, Petitioner contends the trial court lacked subject matter jurisdiction because of "a fatal variance" of proof between the allegations in the indictment and the evidence presented at trial.  However, the claim is without merit for federal habeas relief, as issues of state court jurisdiction are not cognizable in federal habeas, but rest exclusively with the state court. Federal habeas is unavailable to retry

state issues. *Milton v. Wainwright*, 407 U.S. 371 (1972); *Pulley v. Harris*, 465 U.S. 37, 41 (1989) (federal court may not issue the writ on the basis of a perceived error of state law).

Furthermore, in South Carolina, there is no longer a subject matter jurisdiction requirement for an indictment as a matter of state law. In *State v. Gentry,* 610 S.E.2d 494, 499 (S.C. 2005), the Supreme Court of South Carolina "abandoned the view that, in criminal matters, the circuit court acquires subject matter jurisdiction to hear a particular case by way of a valid [grand jury] indictment." *State v. Means,* 626 S.E.2d 348, 352 (S.C. 2006). The *Gentry* court recognized that the subject matter jurisdiction of the circuit court and the sufficiency of an indictment are two distinct concepts. *Gentry,* 610 S.E.2d at 499 n.6 ("[P]resentment of an indictment or a waiver of presentment is not needed to confer subject matter jurisdiction on the circuit court."). "Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong." *Gentry,* 610 S.E.2d at 498; *see also* S.C. Const. art. V, § 11 (providing circuit court "shall be a general trial court with original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts, and shall have such appellate jurisdiction as provided by law").

Pursuant to *Gentry,* an indictment reputed to be insufficient no longer raises a question of subject matter jurisdiction; rather, it raises a question of whether a defendant properly received notice he would be tried for a particular crime. *See Evans v State,* 611 S.E.2d at 516–17; *see also State v. Smalls,* 613 S.E.2d 754, 756–57 (S.C. 2005) (holding circuit court had subject matter jurisdiction to accept a guilty plea when defendant was

not indicted for the charge to which he pleaded guilty, but signed a sentencing sheet which established defendant was notified of the charge to which he pleaded guilty).

Finally, Petitioner's claim fails to set forth a cognizable claim for federal habeas corpus because the Fifth Amendment requirement of indictment by grand jury does not apply to the states. *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972). Therefore, Petitioner's allegation challenging the pre-indictment delay as not creating subject-matter jurisdiction should be dismissed.

> (2)  Petitioner claims there was no chain of custody of any tangible evidence.

In his second argument, Petitioner alleges that there was no chain of custody of any tangible evidence, and specifically for photographs that were introduced. This is an issue of state law, and "[i]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (also reiterating that "federal habeas corpus relief does not lie for errors of state law.") (internal citation omitted)). Federal courts must afford states deference in their determinations regarding evidence and procedure. *Cf. Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[W]e have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted."). Further, even if the state courts' admission of this evidence was error under state law, it is "well established that a state court's misapplication of its own law does not generally

raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Horn*, 120 F.3d 400, 414 (3d Cir. 1997) (emphasis and internal citations omitted). Therefore, Petitioner's allegation in this claim should be dismissed.

> (3)     Petitioner's challenges to the sufficiency of the evidence

The remaining allegations of Ground One allege that "[n]o identification procedures (e.g., fingerprints) were used on tangible evidence and/or crime scene;" and that there was "[n]o evidence of malice or premeditation." Both of these allegations challenge the sufficiency of the evidence to convict. "Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is 'sharply limited.'" *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (*citing Wright v. West*, 505 U.S. 277, 296 (1992)). "Federal review of the sufficiency of the evidence to support a [petitioner's] state court conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Wilson*, 155 F.3d 405–06 (*citing Wright*, 505 U.S. at 292). Therefore, a defendant is entitled to review only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (footnote omitted); *see also George v. Angelone*, 100 F.3d 353, 357 (4th Cir. 1996).

Respondent submits that the state courts' rejection of Petitioner's claim was not "contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

The court's review of the record reveals that Petitioner was not entitled to a directed verdict on the charges against him because there was more than sufficient evidence to submit all three offenses[4] to his jury under *Jackson*. *See* 443 U.S. at 324. Specifically, there was evidence to support the murder and mayhem charges, and malice aforethought, including prior threats to kill the victim; expression of hate for the victim; his confession to his friend Lawson that he had killed the victim by beating him and grabbing a knife; beating the victim to death with a challis, including at least four or five times in the head; severing the victim's penis after the beating; breaking several of the victim's ribs; carrying a portion of the victim's penis in his shirt pocket; and admitting to his roommate that he had "murdered Joe, I beat him unconscious." Additionally, because

---

[4] Murder is the "killing of any person with malice aforethought, either express or implied." S.C. Code Ann. § 16-3-10; *see also State v. Reese*, 633 S.E.2d 898, 902 (S.C. 2006). "'Malice' is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong." *State v. Kelsey*, 502 S.E.2d 63, 69 (S.C.1998).

Mayhem is classified as a felony pursuant to S.C. Code Ann. § 16-1-10 (Supp. 2009). While not defined by statute or reported case, under English common law, mayhem was the infliction of an injury substantially reducing a victim's formidability in combat, a definition that would presumably be in full force and effect in South Carolina based on the reception statute. 7 S.C. Jur. *Mayhem* § 3.

Petit larceny is codified in S.C. Code Ann. § 16-13-30(A) as "simple larceny of any article of goods, choses in action, bank bills, bills receivable, chattels, or other article of personalty of which by law larceny may be committed, or of any fixture, part, or product of the soil severed from the soil by an unlawful act, or has a value of one thousand dollars or less."

Petitioner admitted on direct examination at trial that he stole beer and liquor out of the apartment, there was evidence to support the petit larceny conviction.

The undersigned concludes that this is an issue of evidence, and the court will not grant relief based on the state's own standards for sufficiency of the evidence. *See Wilson v. Greene*, 155 F.3d at 407. Thus, it is recommended that this issue be dismissed and Respondent's motion for summary judgment granted with respect to this ground.

Further, Petitioner has failed to present evidence sufficient to show that the state courts' rejection of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Bell v. Jarvis*, 236 F.3d 149, 157–58 (4th Cir. 2000); 28 U.S.C. § 2254(e)(1) (determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). This claim should be dismissed.

b.    Ground Two

In Ground Two, Petitioner contends that the PCR court denied him a fundamentally fair hearing in which to develop the factual bases for his constitutional claims by not allowing him a continuance and discovery. In his supporting facts, he states that PCR counsel did not present evidence or witnesses and did not argue that he was prejudiced by trial counsel's inept investigations and performance at the jury trial. Petitioner's complaints in Ground Two allege defects in state post-conviction procedures that are not cognizable in a federal habeas corpus action. *Bryant v. Maryland*, 848 F.2d

492, 493 (4th Cir. 1988) (holding errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review); *see also Wright v. Angelone*, 151 F.3d 151, 159 (4th Cir. 1998) (rejecting claim as outside the scope of federal habeas corpus relief, because "[a] federal court 'shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States[,]'" and petitioner was "not currently detained as a result of a decision of the Virginia Supreme Court in the state habeas action.") (*quoting* 28 U.S.C. § 2254(a)). The undersigned recommends that this issue be dismissed.

c. Ground Three

In Ground Three, Petitioner contends that the PCR court erred in denying his allegation regarding trial counsel's failure to obtain previous psychiatric records and a psychiatric expert for an affirmative insanity defense, as well as a complete defense of self-defense.  In his supporting facts, he states that he was denied the right to be heard on this integral part of his defense and was denied the right to prove how this testimony would have completed his defense and rounded out the issue of self-defense. Specifically, Petitioner claims that his trial counsel should have proffered a post-traumatic stress disorder (PTSD) defense at trial on account of suffering from this disorder after being raped in New York.  The PCR court rejected these claims:

> As to Applicant's second allegation, that his attorney was ineffective for failing to raise post-traumatic stress disorder as a defense, this Court finds no evidence in the record below to support that Applicant suffers from this

disorder. Therefore, this Court finds no ineffectiveness of counsel. In addition, Applicant failed to present an expert at the PCR hearing who could testify that he in fact suffered from this disorder at the time of the incident. Therefore, no prejudice can be shown. *See Dempsey v. State*, 363 S.C. 365, 370, 610 S.E.2d 812, 815 (2005). Regarding the admission of Applicant's psychiatric history in general, the record reflects that there was no basis for an insanity defense at trial (*See* Tr. p. 9-39). Therefore, psychiatric records were clearly not relevant for that purpose. Defense counsel argued, partly in contemplation of a self-defense charge, that they were relevant to Applicant's mental state at the time. Limited testimony was allowed regarding Applicant's past, but the judge declined to allow testimony about the actual psychiatric hospitalizations and records due to the fear of misleading or confusing the jury about an insanity defense when in fact there was not one being presented. (*See* Tr. p. 38; p. 326-328; p. 331-352). More importantly, this issue was properly preserved by Mr. Clarke and was fully litigated on appeal. Therefore, this Court finds no ineffective assistance of counsel and no prejudice as to this allegation.

App. 652–53.

Petitioner cannot meet his burden under *Strickland* to demonstrate his trial counsel was ineffective. The PCR court correctly found that there was no evidence in the supporting the claim that counsel was ineffective for failing to raise PTSD as a defense. While Petitioner did not assert an insanity defense, the trial judge allowed limited testimony regarding past sexual assaults against him. The trial judge declined to allow testimony about the actual psychiatric hospitalizations and records for fear of misleading or confusing the jury about an insanity defense when there was not one being presented. *See* App. 38, 326–28, 331–52. Because the "diminished capacity defense is not recognized in South Carolina[,]" *State v. Santiago*, 634 S.E.2d 23, 37 (S.C. App. 2006), Petitioner has not shown prejudice under *Strickland*.

For the foregoing reasons, the court finds that the state courts' rejection of Petitioner's allegations was not contrary to and did not involve an unreasonable application of federal law, *see* § 2254(d)(1), because Petitioner cannot show any prejudice under *Strickland* resulting from counsel's alleged errors. The undersigned recommends that Ground Three be dismissed.

### d. Ground Four

In Ground Four, Petitioner contends that the PCR court erred in denying his claim that trial counsel failed to request jury charges which were rejected on the evidence presented at trial. In his supporting facts, he states that the PCR court unreasonably applied his right to present a complete defense.

The PCR court addressed two issues relevant to this ground in its order: (1) that trial counsel relied upon the old law of self-defense, under which the burden was upon the defendant to prove self-defense by a preponderance of the evidence in making his request for a jury charge on self-defense (*see* App. 621–23, 635); and (2) that counsel failed to request a "circumstantial evidence" charge, as there were no eyewitnesses to the crimes. App. 651–52, 657.

#### (1) Counsel's reliance upon overruled law of self-defense

When self-defense is properly at issue, a defendant is entitled to an instruction that the prosecution must disprove self-defense beyond a reasonable doubt. *See State v. Addison*, 540 S.E.2d 449 (S.C. 2000). To establish self-defense, the following four elements must be present: (1) the defendant must be without fault in bringing on the

difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, defendant must show that a reasonably prudent person of ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily injury or the loss of his life; and (4) the defendant had no other probable means of avoiding the danger. *See State v. Goodson*, 440 S.E.2d 370 (S.C. 1994); *see also State v. Bryant*, 520 S.E.2d 319 (S.C. 1999).

The State objected to a charge on self-defense because it argued the evidence only supported an allegation that the victim had made an indecent proposal, which did not justify Petitioner's actions to save himself, especially in light of Petitioner's other probable means of avoiding the perceived danger. App. 522–24. The trial judge agreed with the State and refused to charge self-defense, finding that the victim had not threatened Petitioner in any way if he rejected the sexual advance. The state court of appeals affirmed his ruling. *State v. Rieb*, 05-UP-222 (S.C. App. Mar. 29, 2005).

The court's review of the record does not reveal any error by the state courts on the issue of ineffective assistance of counsel in requesting a self-defense jury instruction. Trial counsel requested such a charge, but the trial court refused it because the evidence did not support Petitioner's entitlement to the charge. App. 526–28.

<ol start="2">
<li>Counsel's failure to request a circumstantial-evidence instruction</li>
</ol>

Next Petitioner claims trial counsel was ineffective for failing to request a circumstantial evidence instruction. The PCR court, which had found that Petitioner's testimony was not entirely credible (App. 651), rejected this allegation as follows:

> Applicant alleges his trial counsel was ineffective for failing to request a "circumstantial evidence" charge, since there were no eyewitnesses to these crimes. This Court finds that pages 534-36 of the trial transcript clearly indicate that Mr. Clarke did in fact request such a charge, and the trial court charged a standard "direct and circumstantial evidence" charge, as reflected on page 579 of the transcript. Therefore, this allegation is without merit.

App. 657.

"Alleged errors in state court jury instructions . . . are matters of state law and [typically] do not provide a basis for federal habeas corpus relief." *Temoney v. Sapp*, No. 06-1983-CMC, 2007 WL 752200, at *8 (D.S.C. Mar. 1, 2007). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "The question in such a collateral proceeding is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Id.* (internal citations and quotation marks omitted).

The court's review of the record reveals that the trial court's instructions included a circumstantial evidence charge. App. 579. Under these circumstances, Petitioner has

failed to meet his heavy burden to show that the jury instruction by itself so infected the entire trial that the resulting conviction violates due process. The state court decision denying relief was not contrary to and did not involve an established United States Supreme Court precedent, *see* 28 U.S.C. § 2254(d)(1), and therefore, Ground Four should be dismissed.

e.     Ground Five

In Ground Five, Petitioner contends the PCR court erred in denying his allegation regarding trial counsel's failure to impeach a key State's witness. In his supporting facts, Petitioner states that trial counsel did not adequately investigate his roommate Josephs or impeach his testimony with a criminal conviction and a previous statement to law enforcement that was inconsistent with his trial testimony.

Petitioner testified at the PCR hearing that trial counsel should have brought up the fact that Josephs had pled to cocaine charges prior to the trial, as well as the fact that he made prior inconsistent statements to the police. According to Petitioner, Josephs told police that when Petitioner called after the killing, he was crying and repeatedly told Josephs that he was "not a murder, blah, blah, blah. I was just being loud, doing something, that's when they called the police." App. 626–28.

Josephs testified as a defense witness, and he provided possible support for a verdict of less than murder with testimony that the victim had harassed Petitioner with repeated telephone calls all evening; that Josephs had persuaded him to go to the victim's apartment on the night of the killing even though Petitioner did not want to do so; and

that he had not seen Petitioner take any weapon with him. App. 363–67, 373. Further, Josephs testified that Petitioner had never shown any violence toward him. App. 375.

Moreover, counsel had impeached Josephs with his failure to honor the subpoenas of both parties, and with his change in testimony about whether he had ever been to the victim's residence, when counsel reminded him that he was under oath. App. 356–57, 359–60. Additionally, trial counsel presented the veiled suggestion of homosexual prostitution by Josephs by eliciting that the victim had given him $100 after he went to the victim's house for less than an hour on that one visit. App. 360.

The court finds in light of trial counsel's impeachment and the generally positive nature of Josephs's testimony, impeachment with a prior conviction or inconsistent statement could have been counter-productive. Further, Petitioner has failed to demonstrate the prejudice he suffered because of trial counsel's alleged failure. Petitioner never introduced a copy of the supposedly inconsistent statement or the alleged prior conviction, which prevents him from showing prejudice on the ground alleged. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996). The court finds that the state courts' rejection of Petitioner's allegations was not contrary to and did not involve an unreasonable application of federal law, *see* § 2254(d)(1), and therefore, Ground Five should be dismissed.

### f.     Ground Six

In Ground Six, Petitioner contends the PCR court erred in denying his allegation regarding trial counsel's failure to object to prejudicial letters introduced at trial in

violation of the Rules of Evidence and *Miranda*. In his supporting facts, he states that letters he had written to Janice Lee Smith, a co-worker at the restaurant and later a State's witness, were used as a confession and that trial counsel was ineffective for failing to object to their introduction without requesting a *Jackson v. Denno*[5] hearing to authenticate them and for failing to "use the 'rule of completeness' to have the entire letters read to the jury."

Petitioner testified at the PCR hearing that trial counsel failed to object to the State's use of a number of letters that he wrote to Ms. Smith, but he admitted that he wrote these letters to Ms. Smith voluntarily, that he did not write any letters to law enforcement, and that he was shocked that Ms. Smith turned the letters over to the police. App. 628–29.

The PCR judge rejected Petitioner's allegation, finding that Petitioner wrote the letters freely and voluntarily, and wrote them to Ms. Smith rather than to law enforcement. Therefore, there was no basis for a *Jackson v. Denno* hearing regarding the letters. As to the need for "authentication," inasmuch as the statements were used on cross-examination to impeach Petitioner, they were not introduced into evidence and therefore there would be no basis for authentication, beside the fact that Petitioner admitted that he wrote the letters. App. 498.

---

[5] In *Jackson v. Denno*, 378 U.S. 368, 376–378 (1964), the Supreme Court held that a criminal defendant has a constitutional due process right to litigate, at some stage of his criminal trial, whether his pretrial statement to law enforcement, sought to be introduced against him by the prosecution, had been voluntarily rendered and to have a fair hearing and reliable determination on that issue uninfluenced by the truth or falsity of the statement itself.

After reviewing the record and briefing, the court finds that Petitioner has provided no case law supporting a right to a *Jackson v. Denno* hearing, when, as here, the incriminating statements that he made were made to a friend and co-worker, and not to law enforcement. Further, the State only used the letters for the purpose of impeachment. "In these circumstances a separate hearing on voluntariness of the statement as determined in *Jackson v. Denno* . . . is not required." *Scott v. State*, 253 S.E.2d 698, 699 (Ga. 1979); *State v. Martinez*, 575 P.2d 30, 31 (Kan. 1978); *compare Harris v. New York*, 401 U.S. 222 (1971). The court finds under these circumstances, the state court decision denying relief was not contrary to and did not involve an established United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Therefore, Ground Six should be dismissed.

g.    Ground Seven

In Ground Seven, Petitioner contends the PCR court erred in denying his allegation regarding trial counsel's failure to object to the Solicitor's prejudicial closing arguments. In his supporting facts, he states that the State's attorney's argument was "simply bolstering the State's weak, virtually non-existent case."

The PCR court rejected this allegation, finding that:

Applicant also contended that his trial counsel was ineffective for failing to object to "improper bolstering" of the State's case in the solicitor's closing argument, specifically by implying to the jury that Applicant was lying in his testimony. The State's closing arguments should be confined to arguing the evidence in the record and the reasonable inferences that may be drawn from the evidence. *State v. Copeland*, 321 S.C. 318, 468 S.E.2d 620 (1996). Further, the solicitor's closing argument must not appeal to the personal

biases of the jurors. *Id. See also State v. Northcutt*, 372 S.C. 207, 222, 641 S.E.2d 873, 881 (2007). However, when a defendant testifies, as Applicant did here, he places his credibility into issue, and is subject to impeachment and cross-examination. Consequently, in closing argument, the solicitor has the right to point out inconsistencies and discrepancies in the defendant's testimony because his credibility is at issue. After a review of the trial transcript, this Court finds nothing objectionable in the closing argument of the solicitor (*See* Tr. pp. 554-570). Furthermore, if there existed any objectionable comment by the solicitor, the Applicant could not show prejudice in light of the overwhelming evidence of guilt, to include his own testimony. Therefore, Applicant has not met his burden of proof on this allegation.

App. 657.

When examining claims pertaining to improper comments by a prosecutor, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). However, the *Darden* Court noted that "it is not enough that the remarks were undesirable or even universally condemned." *Id.* (internal quotation omitted).

Having reviewed the record and considered the weight of the evidence and the extent of these comments, the court finds that the solicitor's comments did not render Petitioner's trial fundamentally unfair. Petitioner has failed to establish that there is a reasonable probability that the result of the proceeding would have been different if trial counsel had preserved these objections. *Strickland*, 466 U.S. at 694. Therefore, Petitioner cannot establish that trial counsel was constitutionally ineffective in failing to preserve his objections during closing arguments. Moreover, Petitioner has not shown that the state

courts' analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams v. Taylor*, 529 U.S. at 410. Based on the foregoing, Petitioner is not entitled to federal habeas relief on these grounds.

h.      Ground Eight

In Ground Eight, Petitioner contends the PCR court erred in denying his allegation regarding appellate counsel's failure to raise the prejudicial videotape issue on appeal.  In his supporting facts, he states that the videotape of Josephs taken by the North Myrtle Beach police was never mentioned in the S.C. Crim. P. Rule 5 motion, and because it allegedly impeached Josephs's live testimony and impeached other evidence, it was a *Brady*[6] violation.

In the present case, Assistant Appellate Defender Robert M. Dudek represented Petitioner on direct appeal. Petitioner testified at the PCR hearing that because the videotape was not produced in discovery, it should not have been shown to the jury at the trial; and that his trial counsel was ineffective for allowing its introduction.  Petitioner admits that trial counsel moved for a mistrial, but he complains that appellate counsel did not raise all possible meritorious issues because Petitioner was not timely provided with the trial transcript.  App. 629–32.

---

[6]In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court "held that when a State suppresses evidence favorable to an accused that is material to guilt or to punishment, the State violates the defendant's right to due process, 'irrespective of the good faith or bad faith of the prosecution.' " *Cone v. Bell*, 129 S. Ct. 1769, 1772 (2009) (*citing Brady*).

The PCR judge denied Petitioner's related claim that trial counsel was ineffective for failing to object to introduction of the videotape:

> Applicant also contended that since the "Blake Josephs" videotape was not produced in discovery, it should not have been shown to the jury at the trial, that his trial counsel was ineffective for allowing this to happen. The record reflects that the tapes were in fact produced in discovery the week prior to trial (Tr. p. 29, lines 22-25). Mr. Clarke informed the trial judge that he had only just received the two police car videos the week before, and as reflected on page 29-30 of the transcript of the pre-trial proceedings, he objected to the 911 tape, as well as the two police car videotapes, on the ground that Blake Josephs was present and could testify about the things that occurred.

App. 653–54.

The PCR judge denied Petitioner's allegation. He found that "[Petitioner] alleges that his appellate counsel was ineffective for only raising two issues on appeal and not raising other issues that were potential appellate issues. [Petitioner] has not met his burden on this allegation." App. 657. After discussing the applicable law, the PCR judge found that "appellate counsel raised two issues on appeal: the trial court's failure to charge self-defense and the trial court's failure to allow the defendant's psychiatric history into evidence. This Court finds that these two issues were valid and meritorious issues for appeal, and that appellate counsel made reasonable choices and was not ineffective." App. 657–58.

A defendant is constitutionally entitled to the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387 (1985). A PCR applicant has the burden of proving appellate counsel's performance was deficient. *Anderson v. State*, 581 S.E.2d 834 (S.C.

2003). Appellate counsel is not required to raise every non-frivolous issue that is presented by the record, *Tisdale v. State*, 594 S.E.2d 166 (S.C. 2004), as "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). Rather, appellate counsel has a professional duty to choose among potential issues according to their merit. *Id*.

To obtain relief a petitioner must show that appellate counsel's performance was (1) deficient; and (2) prejudice from the appellate counsel's deficiency. *Southerland v. State*, 524 S.E.2d 833 (S.C. 1999). In other words, a petitioner is required to demonstrate "that his counsel was objectively unreasonable in failing" to identify and argue present significant and obvious issues on appeal, and "a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted).

The court's review of the record does not support habeas relief on this ground. The PCR court properly found no *Brady* or Rule 5 violation because the videotape was disclosed a week before the trial. Further, the alleged error was not preserved at trial, so appellate counsel could not raise the claim on appeal. Finally, Petitioner has failed to show that this issue of the Josephs tape was a significant and obvious issue on appeal or that it was more meritorious than the issues that appellate counsel did raise. Because Petitioner has failed to demonstrate counsel was ineffective under *Strickland*, or demonstrate that the state courts' analysis of this issue unreasonably applied established

federal law or unreasonably determined the facts, Petitioner is not entitled to federal habeas relief on Ground Eight.

i.     Ground Nine

In Ground Nine, Petitioner contends the PCR court erred in denying his allegation regarding appellate counsel's failure to raise on appeal the directed verdict issue. In his supporting facts, he states that trial counsel moved for a directed verdict twice because of the State's insufficient evidence, but the denial of the directed verdicts were prejudicial error because the only substantial evidence the State had was an altered brass cup supposedly used as a murder weapon.

As in Ground One above, this allegation challenges the sufficiency of the evidence to convict. In light of the federal court's review of such claims being "sharply limited," *see Wilson*, 155 F.3d at 405, the court's review of the record does not support Petitioner's entitlement to relief on this ground, as there is overwhelming evidence to support Petitioner's guilt.

j.     Ground Ten

In Ground Ten, Petitioner contends the PCR court erred in denying his allegation regarding appellate counsel's failure to provide "all necessary portions of transcript" to perfect the Appeal and challenging the "edited" portions of transcript, which denied him a full and fundamentally fair appeal. In his supporting facts, he states that appellate counsel held the transcript of record back, refused to challenge the veracity, and the editing of the transcript prejudiced Petitioner's appeal and denied him a full and fair appeal.

In rejecting Petitioner's argument, the PCR court found that Petitioner was not entitled to relief based upon a violation of the double jeopardy clause (App. 656–57); and he found that there was "no merit to Applicant's contention that appellate counsel was ineffective for 'withholding his transcript' or for allowing the transcript to be edited for purposes of the Record on Appeal." The PCR court observed that "[t]he Appellate Court Rules require that only relevant portions of the Transcript are to be included in the Record on Appeal. *See* South Carolina Appellate Court Rules, Rule 209 (b)." App. 658 & n.8.

As in the prior ground, this allegation challenges the sufficiency of the evidence to convict. In light of the federal court's review of such claims being "sharply limited," *see Wilson*, 155 F.3d at 405, the court's review of the record does not support Petitioner's entitlement to relief on this ground, as there is overwhelming evidence to support Petitioner's guilt.

F.      Motion to Amend Petition

Petitioner has filed a motion to amend his Petition [Entry #29] to supplement his Petition with a citation to *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009). Respondent opposes the motion to the extent that Petitioner wishes to assert additional allegations from those in his original pleading because the same could have been, but were not, raised at that time and his motion would unnecessarily delay this action and frustrate finality.

Leave to amend a pleading should be denied when the amendment would cause undue delay, when it would be prejudicial to the opposing party, when there has been bad

faith on the part of the moving party, or when the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178 (1962); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir. 1986).

Petitioner's amendment would be futile because his proposed supplement does not add or amend any claim, but rather urges the court to apply *Bostick* to not bar his procedurally-defaulted claims. Because the court does not rely on procedural default in addressing any of Petitioner's claims and instead addresses them on their merits, the court finds Petitioner's amendment would be futile. Therefore, the court recommends that Petitioner's motion to amend [Entry #29] be denied.

III. Conclusion

For the foregoing reasons, the court recommends that Respondent's motion for summary judgment [Entry #13] be granted and that Petitioner's motion to amend [Entry #29] be denied.

IT IS SO RECOMMENDED.

August 4, 2010                                          Shiva V. Hodges
Florence, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**